*In re* ESTATE OF PAUL I. PARKER, Deceased (Olive Kelm Parker, Claimant-Appellant, v. Linda J. Brewer *et al.*, Co-Ex'rs of the Estate of Paul I. Parker, Deceased, Appellees).

Fifth District   No. 5—87—0444

Opinion filed June 23, 1988.

Brian L. Bower, of Brainard, Bower & Kramer, of Charleston, for appellant.

Glenn A. Braden, of Braden Law Office, of Neoga, for appellees.

JUSTICE LEWIS delivered the opinion of the court:

This matter comes before us from a decision in favor of the respondents below, Linda J. Brewer and Betty R. Starwalt, co-executors of the estate of Paul I. Parker (deceased), from the circuit court of Shelby County. Petitioner, Olive Kelm Parker, filed a claim against the estate of the deceased, filed an application for the surviving spouse's award allowed by section 15—1(a) of the Probate Act of 1975 (Ill. Rev. Stat. 1985, ch. 110½, par. 15—1(a)), and filed a renunciation and election to take against the will on October 3, 1986. In answer to petitioner's petition, respondents raised as a defense a prenuptial agreement entered into by petitioner and the deceased prior to their marriage. After a hearing on petitioner's petition, the circuit court entered an order on June 8, 1987, denying petitioner's claim, denying her the surviving spouse's award, and denying her renunciation and election to take against the will. From the circuit court's order, petitioner appeals.

The primary issues on appeal are whether the circuit court correctly interpreted the prenuptial agreement entered into by petitioner and the deceased and whether the prenuptial agreement was void for want of consideration. There is no material dispute of the facts in this case but only a question of law. Before considering the issues, we will set forth the pertinent facts.

On September 16, 1981, Paul I. Parker and Olive Kelm (Parker) executed a prenuptial agreement. Subsequently, on November 11, 1981, they married and they remained married until the time of Paul Parker's death on March 30, 1986. The respondents, Linda J. Brewer and Betty R. Starwalt, heirs of decedent, were appointed as the decedent's legal representatives on April 30, 1986. That same day, the circuit court entered an order admitting decedent's will to probate. Decedent's will was a simple one in that it provided for the payment of his debts, his funeral expenses, and his death taxes out of his estate and it further provided that the remainder of his estate, after payment of these liabilities, was to be divided in such a manner that his eight children were each to receive one-ninth of his remaining estate and that two of his grandchildren were each to receive a one-eighteenth portion of his estate. No provisions were made for the benefit of the petitioner. Petitioner filed her petition seeking a claim against the estate under the prenuptial agreement, requesting the allowance of a surviving spouse's award, and renouncing and electing to take against decedent's will.

The hearing on petitioner's petition was held on May 12, 1987. At that hearing, the circuit court heard petitioner's testimony and considered the prenuptial agreement. The circuit court, in its subsequent order, found that the paragraph of the prenuptial agreement upon which petitioner based her claim for $10,000 was severable from the remainder of the prenuptial agreement and that since neither petitioner nor the deceased gave force and effect to that paragraph, petitioner's claim for $10,000 against the estate was denied. The circuit court further found that there was sufficient consideration to uphold the remainder of the prenuptial agreement and thereby denied petitioner her allowance of the surviving spouse's award and denied her renunciation and election to take against the will, as the petitioner had waived those rights in the prenuptial agreement.

Petitioner's specific issues on appeal are threefold: first, that the circuit court erred when it found the prenuptial agreement clauses severable; second, that the circuit court erred when it failed to find the prenuptial agreement void for want of consideration; and third, that the circuit court erred when it "restructured" the stated consideration of the prenuptial agreement.

In order to address all of petitioner's issues, we must first set forth the prenuptial agreement in its entirety. The prenuptial agreement stated:

> "This Agreement made and entered into by and between PAUL PARKER of Neoga, Illinois, and OLIVE KELM of Mattoon, Illinois, WITNESSETH;
>
> 1. The parties hereto contemplate a marriage with each other and their marriage is shortly to be solemnized and whereas, each of the parties hereto have children by a previous marriage who would be affected by the contemplated marriage of the parties. In anticipation of said contemplated marriage they desire, by this prenuptial agreement to fix and determine the rights and claims that will accrue to each of them in the estate and property of the other by reason of their marriage, and to accept provisions of this agreement in lieu of and in full discharge, settlement and satisfaction of all such rights and claims.
>
> 2. NOW, THEREFORE, in consideration of the marriage about to be entered into and solemnized by and between the parties hereto and further consideration of the mutual covenants and agreements herein contained, the parties hereto agree as follows:
>
> 3. After their marriage, the parties hereto shall each de-

posit in a bank the sum of $2000.00 each in a joint checking account, which account shall be used for living expenses of the parties; when said account is depleted to less than One Hundred Dollars ($100.00), the parties shall each deposit another $2000.00 in said account; each of the parties shall also deposit and constantly maintain the sum of Ten Thousand Dollars ($10,000.00) in a Certificate of Deposit in a bank in a joint account in both of their names; at the death of either of the parties hereto, the survivor shall be the sole owner of said account and certificate of deposit.

4. On the death of either of the parties hereto during the marriage, the survivor shall be the sole owner of any furniture, household appliances and motor vehicle purchased by the parties hereto after their marriage to each other.

5. If the parties hereto are living in the farm home of Paul Parker at the time of the death of Paul Parker, then she, the said Olive Kelm, shall have the right to live in the house of Paul Parker for the remainder of her natural life or as long as she remains the widow of Paul Parker; she shall have the use of this house without charge but she shall pay the taxes on the house and the insurance on said house and shall maintain the house in good repair; she shall have no use of the farm land or other buildings on the farm where the house is located; if she moves from said house, then she shall have no further interest in said house.

6. In consideration of the marriage and the property interest given in Paragraph 3, 4 and 5 hereof, the said Olive Kelm will waive, release and relinquish unto the said Paul Parker, his heirs, legatees and devisees, all the property, right, homestead and dower in the real and personal estate which Paul Parker now possesses or may acquire, of which she, Olive Kelm, may become vested by force of the contemplated marriage; and at all times during the marriage of the parties she will permit Paul Parker to control and manage his real and personal estate at his own separate direction, free from her interference or control for his own use, and that she will permit him to dispose of his property by Will in any way he may desire, and that she will not renounce any Will that he now has or later makes; and she hereby covenants and agrees to and with said Paul Parker, his heirs and assigns, that she will warrant and defend his estate and property to the said Paul Parker, his heirs, legatees, and devisees against herself and her heirs forever; that in con-

sideration of such marriage and the mutual covenants of the parties, she, the said Olive Kelm, releases all her rights of dower, homestead, surviving spouse award, property rights, and any and all interest in the real and personal estate of the said Paul Parker to which by law she might be otherwise entitled. That she, the said Olive Kelm, will claim no interest whatsoever in the estate of Paul Parker, except the property interests mentioned in Paragraphs 3, 4 and 5 hereof.

7. In consideration of the marriage and the mutual covenants contained herein, Paul Parker will waive, release and relinquish unto the said Olive Kelm, her heirs, legatees and devisees, all the property, right, homestead and dower in the real and personal estate which Olive Kelm now possesses or may acquire, of which he, Paul Parker, may become vested by force of the contemplated marriage; and at all times during the marriage of the parties he will permit Olive Kelm to control and manage her real and personal estate at her own separate direction, free from his interference or control for her own use, and that he will permit her to dispose of her property by Will in any way she may desire, and that he will not renounce any Will that she makes or has made; and he hereby covenants and agrees to and with said Olive Kelm, her heirs and assigns that he will warrant and defend her estate and property to the said Olive Kelm, her heirs, legatees and devisees against himself and his heirs, forever; that in consideration of such marriage and the mutual covenants of the parties, he, the said Paul Parker, releases all his rights of dower, homestead, surviving spouse award, property rights, and any and all interest in the real and personal estate of the said Olive Kelm to which by law he might be otherwise entitled. That he, the said Paul Parker, will claim no interest whatsoever in the estate of Olive Kelm, except the bank accounts mentioned in Paragraph 3 hereof, and the personal property named in Paragraph 4 hereof.

8. Each of the parties hereby acknowledge[s] that each has fully acquainted the other with his or her means and resources; that each has informed the other, in detail, of the net value of his or her property, real and personal; that each of the parties has ascertained and weighed all the facts and circumstances likely to influence his or her judgment herein; that all matters embodied herein, as well as all questions pertinent thereto have been fully and satisfactorily explained to each of the parties; that each of the parties has given due consideration to such

matters and questions; that each knows the value of the share of the other's property that each of the parties would take in case of the death of the other if this prenuptial agreement were not executed by each of the parties; that each clearly understands and consents to all of the provisions hereof; and that each party is entering into this prenuptial agreement freely, voluntarily and with full knowledge of its legal effect.

9. Each of the parties will file his or her own separate income tax return and pay his or her own income tax, both state and federal.

10. This prenuptial agreement contains the entire understanding of Paul Parker and Olive Kelm. No representations, warranties, promises, covenants or undertakings, oral or otherwise, other than those expressly set forth herein, have been made by the parties hereto.

11. This prenuptial agreement shall become effective when and if, and only when and if, the contemplated marriage between the parties hereto is actually solemnized. If the marriage is not solemnized, this agreement shall be and become wholly null and void.

12. Each party hereto agrees that his or her funeral expenses will be paid by the executor of his or her estate and that said funeral expenses will not be paid by the surviving spouse.

13. This prenuptial agreement has been executed, witnessed and notarized in duplicate and each of the parties hereto have [sic] retained an executed copy thereof.

14. This prenuptial agreement shall inure to the benefit of, and shall be binding upon the parties hereto, their heirs, executors, administrators and assigns."

We first address petitioner's issue that the circuit court erred when it failed to find that the prenuptial agreement was void for want of consideration. Petitioner argues that since the deceased failed to place $10,000 in a certificate of deposit in joint tenancy and since the $10,000 was the consideration for the prenuptial agreement, the prenuptial agreement is null and void and she is entitled to the surviving spouse award and to her statutory share of decedent's estate. We do not agree.

In the instant case, the consideration for the prenuptial agreement is stated in the document itself, the consideration being the marriage of the parties, and several property interests, which included the agreement to establish a joint bank account for household

expenses and the agreement to establish the $10,000 certificates of deposit. Thus part of the consideration of the prenuptial agreement was the mutual promises of the decedent and the petitioner to, at some time in the future, establish the $10,000 certificates of deposit. Mutual and concurrent promises are sufficient legal consideration for a contract. (*Leisure v. Smith* (1973), 13 Ill. App. 3d 1070, 302 N.E.2d 177. See also, *Nathan v. Leopold* (1969), 108 Ill. App. 2d 160, 247 N.E.2d 4.) The marriage of the parties and the exchanging of their mutual promises were part of the consideration of this prenuptial agreement. Since there was consideration for the prenuptial agreement, it did not fail for want of consideration. The fact that neither party had acquired the certificates of deposit as required by the prenuptial agreement did not void the agreement, as it was the promise to do so and not the actual purchase of the certificates of deposit that formed the consideration. Because there was no lack of consideration in this case, the prenuptial agreement was not void for want of consideration and the circuit court was correct in upholding this agreement.

■ Respondents' contentions that the failure of the parties to establish the certificates of deposit indicates a modification of the agreement, or that, at least, petitioner cannot claim her right to the $10,000 as she has likewise failed to establish a certificate of deposit on decedent's behalf are without merit. The prenuptial agreement gave no time frame for the establishing of the $10,000 certificates of deposit other than to state that they were to be established sometime after the marriage. The parties, by the terms of the prenuptial agreement, were not to take possession of the certificates of deposit until the death of one of them. The time for tendering of the $10,000 to the petitioner did not arise until the death of Paul Parker. Similarly, petitioner's payment of the $10,000 to the decedent would only have matured upon her death, if she preceded the decedent in death. Because the time of tendering the $10,000 was upon the death of one of the parties, the fact that petitioner had likewise not established a certificate of deposit is not relevant. Additionally, since it was the mutual promises that provided the consideration and since no time frame was imposed upon the carrying out of the promises, we cannot view this failure of the parties to acquire the certificates of deposit as dispositive of the parties' intent to modify the agreement as the time of delivery of the payment had not arrived until the death of one of the parties. Further, petitioner's testimony established that she and the deceased had established a joint checking account from which household expenses were paid, in accordance with the prenuptial agree-

ment. She also stated that the parties had purchased an automobile after their marriage and that the title to this vehicle was in both their names. These acts indicate that the intent of the parties was to abide by the prenuptial agreement. This gives further impetus to our decision that the parties did not intend to modify nor do their actions support any attempt to modify the prenuptial agreement.

■ ■ Having found the prenuptial agreement a valid contract, we must now determine whether the circuit court was correct when it held that the prenuptial agreement was severable. The circuit court, in its order, held that the paragraph in which the parties agreed to establish a joint bank account for the household expenses and in which they agreed to establish the certificates of deposit was severable from the remainder of the prenuptial agreement. However, the circuit court gave no basis for its determination. We find that the circuit court's order finding the prenuptial agreement severable was against the manifest weight of the evidence. In determining whether a contract is entire or severable, consideration is given to the intention of the parties as it is manifested by the specific terms of the contract. (*Stratemeyer v. West* (1985), 136 Ill. App. 3d 1095, 484 N.E.2d 399; *Mineral Resources, Inc. v. Classic Coal Corp.* (1983), 115 Ill. App. 3d 114, 450 N.E.2d 379.) Factors which indicate the intention of the parties are whether the performance by a party consists of distinct and separate items and whether the price paid by the other party can be apportioned to the item being performed. (*Stratemeyer*, 136 Ill. App. 3d 1095, 484 N.E.2d 399.) In reviewing the prenuptial agreement in this case, we cannot determine that the covenant to establish the certificates of deposit was severable from the remainder of the agreement. The language of the agreement clearly indicates that each party agreed to forego any portion of the other's estate upon the death of that person. The consideration for the forfeiting of those rights to which the surviving spouse would be entitled by law was both the marriage and the covenants contained in the agreement. The parties obviously intended the contract to be treated in its entirety and not severably. This is clear by the use of the language "in consideration of the marriage *** and further consideration of the mutual covenants" in paragraph 2 of the agreement, of the language "[i]n consideration of the marriage and the property interest given in Paragraph 3, 4 and 5 hereof" in paragraph 6 of the agreement, and of the language "[i]n consideration of the marriage and the mutual covenants contained herein" in paragraph 7 of the agreement. Therefore, we reverse the circuit court's order finding that the prenuptial agreement was severable.

■ We further determine that petitioner is entitled to her claim for $10,000 from decedent's estate. The rules which govern the interpretation and construction of contracts are to be applied when construing a prenuptial agreement. (*In re Estate of Klinker* (1979), 80 Ill. App. 3d 28, 399 N.E.2d 299.) Thus, as in any contract, a prenuptial agreement should be considered in its entirety to determine and to give effect to the real intention of the parties. (*Klinker*, 80 Ill. App. 3d 28, 399 N.E.2d 299.) Where the terms of the contract are plain and unambiguous, the intent of the parties must be ascertained solely from the words contained within the four corners of the document. (*Puckett v. Oelze* (1985), 134 Ill. App. 3d 1020, 481 N.E.2d 867.) The language of the prenuptial agreement in this case was plain and unambiguous and the intent of the parties can be discerned from that document. As we stated earlier, the marriage of the parties and the mutual promises to establish a joint bank account and certificates of deposit were given in lieu of either party exercising his or her marital rights upon the death of one of the parties. The parties intended that each of them should receive, at a minimum, $10,000 to forego those rights. Therefore, to effectuate the intent of the parties, we must hold that petitioner is entitled to the $10,000 promised.

■ Petitioner's last contention is that the circuit court altered the consideration required by the prenuptial agreement when it held that there was sufficient consideration to sustain the remainder of the contract after severing the third paragraph of the agreement. In view of our decision as to the prior issues, we need not consider this issue as it is rendered moot by our previous determinations.

For the foregoing reasons, we affirm the judgment of the Shelby County circuit court with regard to its finding that the prenuptial agreement was not void for want of consideration, but reverse the circuit court's finding that the prenuptial agreement was severable and reverse the circuit court's denial of petitioner's claim against decedent's estate for $10,000.

Affirmed in part, reversed in part.

WELCH and KARNS, JJ., concur.