HARRY COHEN, d/b/a Bell Iron & Metal Company, Plaintiff-Appellant, v. WOOD BROTHERS STEEL STAMPING COMPANY, Defendant-Appellee.

First District (5th Division)   No. 87—1579

Opinion filed September 30, 1988.—Rehearing denied November 4, 1988.

Myron M. Cherry and Bruce Rose, both of Cherry & Flynn, of Chicago, for appellant.

Brooke R. Whitted and Joseph T. Monahan, both of Whitted & Spain, P.C., of Chicago, for appellee.

PRESIDING JUSTICE LORENZ delivered the opinion of the court:

This appeal follows ruling below on cross-motions for summary judgment (Ill. Rev. Stat. 1985, ch. 110, par. 2—1005) in an action for the alleged breach of a purported output contract for the sale of scrap metal.

We reverse.

The following facts are undisputed.

Bell Iron & Metal Company (Bell Iron) is a scrap metal salvaging company. Bell Iron was formed by Harry Cohen in 1940. Wood Brothers Steel Stamping Company (Wood Brothers) produces scrap metal as a by-product in its manufacturing process. In 1940, Wood Brothers was owned by Harry Cohen's brother, Ralph Cohen. At some time beginning in 1942, and continuing to 1974, Harry Cohen, doing business as Bell Iron, picked up scrap metal produced by Wood Brothers.

In 1974, Arthur Lasser, a long-time employee of Wood Brothers and the son-in-law of Ralph Cohen, became the president of Wood Brothers after acquiring 46% of the common stock of the company through gifts from Ralph Cohen. The remainder of Ralph Cohen's stock was repurchased by the company. At that time, Lasser, as president of Wood Brothers, signed the following letter, dated April 19, 1974, written on company stationery, and addressed to plaintiff Harry Cohen:

"Dear Mr. Cohen:

This will confirm our understanding that you will continue to purchase from us all the scrap that generates from the operation of our plant at fair market price, as long as you live on the same basis as we have dealt between us in the past.

We are very pleased with your service and hope you can continue to deal with us for *many* years to come.

Sincerely yours,
WOOD BROS. STEEL STAMPING CO.
[Signature]
Arthur Lasser-President
AL:amh
CC: Ralph Cohen" (Emphasis in original.)

However, at some time after April 1974, Wood Brothers began to reduce the amount of scrap metal sold to Bell Iron. In August of 1984, Wood Brothers discontinued all scrap metal sales to Bell Iron.

On December 3, 1985, Harry Cohen filed a complaint in the circuit court of Cook County for breach of contract against Wood Brothers. The complaint alleged that the April 19, 1974, letter constituted a memorialization of a previously existing contractual relationship. Wood Brothers denied the material allegations of the complaint and asserted, as affirmative defenses, that no oral or written contract existed and that defendant discontinued sale of scrap metal to plaintiff because plaintiff was unable to furnish service comparable to other scrap dealers.

Arthur Lasser was deposed on June 16, 1986. Lasser testified that prior to 1974 Bell Iron was the only salvager that picked up Wood Brothers' scrap metal. Lasser stated that the exclusive arrangement was permitted by Ralph Cohen. Ralph Cohen designated to Lasser that plaintiff was the person to be used to pick up Wood Brothers' scrap metal. However, Lasser testified, after 1974, other companies were also used because of inefficiencies in the scrap collection methods of Bell Iron. He also stated that plaintiff was informed of those reasons. Nevertheless, Lasser stated that plaintiff was allowed to continue to do business with Wood Brothers because plaintiff was Lasser's deceased wife's uncle and was "a gentleman." Lasser admitted that the price Bell Iron paid for the scrap was comparable to the price paid by other salvagers.

Regarding the letter dated April 19, 1974, Lasser stated that he was instructed to sign the letter by Ralph Cohen, his father-in-law. The letter had been dictated by Ralph Cohen's attorney, Sam Schemmeter, now deceased. Lasser stated that although the letter was written at the time of the repurchase of Ralph Cohen's stock by Wood Brothers, its writing was not a condition of that repurchase. Nor was Lasser ever told that the letter would have any effect on the stock repurchase.

Harry Cohen was deposed on June 19, 1986. Cohen testified that beginning in 1942 he began picking up scrap metal from Wood Brothers because his brother owned the plant. Cohen stated that Wood Brothers would call him to come and pick up the scrap or sometimes he would drive by without being called. After Lasser took over ownership of Wood Brothers, however, the manner of picking up the scrap changed. Prior to 1974, Cohen picked up scrap from Wood Brothers on a regular basis. The price paid was determined from trade publications. Tonnage was determined in the scrapyard and Cohen would write a statement to Wood Brothers based on tonnage and the price. Cohen stated, however, that he did not know what happened to the copies. Cohen stated that Lasser never complained about the way the scrap was picked up or suggested different methods. And between 1974 and 1984, Wood Brothers continued to call Cohen to pick up the scrap. Cohen stated that he last picked up scrap metal from Wood Brothers on August 22, 1984, but continued to pick up scrap from other sources.

Cohen testified that on the day his brother sold Wood Brothers, his brother spoke to him about the April 19, 1974, letter. Cohen stated that his brother told him he had obtained "a life contract to take [Wood Brothers'] scrap." Cohen also testified that his brother stated Lasser was satisfied with Bell Iron's service and that Lasser wanted those services to continue. Cohen admitted, however, that he never spoke to Lasser about the letter.

On July 31, 1986, defendant moved for summary judgment on the ground that no enforceable contract existed. Plaintiff filed a cross-motion for summary judgment on October 2, 1986. Following argument on March 17, 1987, the trial judge denied plaintiff's motion and granted summary judgment for defendant. This appeal follows the denial of plaintiff's motion for reconsideration of that order.

OPINION

■ Our function in reviewing the trial court's entry of summary judgment is to determine, after viewing the facts in a light most favorable to plaintiff (*Montague v. School Board* (1978), 57 Ill. App. 3d 828, 373 N.E.2d 719), whether the trial court correctly concluded that no genuine issue of material fact warranted a full trial. (*Szczesny v. W.G.N. Continental Broadcasting Corp.* (1974), 20 Ill. App. 3d 607, 315 N.E.2d 263, *appeal aff'd on other grounds after remand* (1977), 54 Ill. App. 3d 619, 370 N.E.2d 11.) In the hearing below, the court concluded that no consideration was shown to support the formation of a contract between the parties and, even notwithstanding evidence of

consideration, the indefiniteness of the purported contract precluded suit for breach.

We consider, first, whether valid consideration existed to support a contract. We note that the instant case presents a question as to whether any consideration was intended to pass between the parties as distinguished from the question of the failure of contemplated consideration to materialize. (See 12 Ill. L. & Prac. *Contracts* §61 (1983).) We also note that the question of the existence of consideration is one of law. *O'Neill v. De Laney* (1980), 92 Ill. App. 3d 292, 415 N.E.2d 1260.

On appeal, plaintiff contends, in part, that it was error for the trial court to conclude that no consideration existed to support the contract given the testimony as to the mutual promises of plaintiff and his brother, Ralph Cohen, in 1942 when Ralph Cohen "gave" plaintiff the Wood Brothers account and considering the continuing execution of those promises for over 30 years.

■ We agree. Generally, the exchange of mutual and concurrent promises between parties constitutes the requisite consideration to support an enforceable contract. (*Anderson v. Vrahnos* (1986), 149 Ill. App. 3d 251, 500 N.E.2d 110.) The promise of a producer to sell his entire output or production in return for another's promise to purchase the entire quantity produced, like a buyer's promise to buy all of its requirements in exchange for seller's agreement to sell same (*Streich v. General Motors Corp.* (1955), 5 Ill. App. 2d 485, 126 N.E.2d 389), constitute sufficient mutual promises to support an enforceable agreement. (A. Corbin, Contracts §158 (1963).) Further, it is recognized that even contracts which are defective due to a lack of mutuality at inception may be cured by performance in conformance therewith. *Adkisson v. Ozment* (1977), 55 Ill. App. 3d 108, 370 N.E.2d 594.

■ In the instant case, it is undisputed that from 1942 until at least 1974 plaintiff enjoyed the exclusive right to pick up all of the scrap output of Wood Brothers. Both plaintiff and Arthur Lasser testified that plaintiff did so pick up the scrap during that time. Further, the letter dated April 17, 1974, to plaintiff attests to the continuing execution of mutual promises to pick up total scrap output, in return for payment, by its language calling for plaintiff to "continue to purchase *** all the scrap that generates from the operation of [Wood Brothers' plant] *** on the same basis as we have dealt between us in the past." In light of that evidence, we cannot conclude that, as a matter of law, the trial court was correct in ruling, on a motion for summary judgment, that no consideration existed upon which to initially form an enforceable contract.

We next consider whether the trial court correctly concluded that

the terms of the contract were too indefinite to enforce. Plaintiff urges the court in the instant matter to apply the provisions of article 2 of the Uniform Commercial Code (UCC), applicable to contracts for the sale of goods, as those provisions have been codified in Illinois. (Ill. Rev. Stat. 1985, ch. 26, par. 1—101 *et seq.*) Defendant does not dispute that those provisions apply notwithstanding further barriers to the enforceability of the contract.

■ Under UCC section 2—201 a contract for the sale of goods for $500 or more is enforceable in Illinois where three requirements are met: (1) a writing sufficient to indicate a contract for sale between the parties exists, (2) the writing is signed by the party against whom enforcement is sought or an authorized agent, and (3) the quantity of goods to be sold is stated. Ill. Ann. Stat., ch. 26, par. 2—201, Illinois Code Comment, at 109-10 (Smith-Hurd 1963).

■ Here, the trial court had before it a sufficient writing in the form of the April 17, 1974, letter. The language of that letter clearly contemplates a past and future contractual relationship between plaintiff and Wood Brothers. The letter contains the signature of Wood Brothers' president, Arthur Lasser. That letter contains a specific quantity term: total output of scrap metal produced by Wood Brothers. Total output as an essential quantity term is explicitly validated under UCC section 2—306. (Ill. Rev. Stat. 1985, ch. 26, par. 2—306.) Beyond the quantity of goods exchanged, unspecified terms of the contract do not make the contract fail for indefiniteness and may be supplied under other provisions of article 2. (Ill. Rev. Stat. 1985, ch. 26, par. 2—204(3); see, *e.g.*, Ill. Rev. Stat. 1985, ch. 26, pars. 2—305 (price), 2—308 (place of delivery), 2—309 (time of delivery).) Finally we must acknowledge that the instant contract's duration, as contained in language of the letter, measured by plaintiff's life, does not itself preclude formation of a contract as Illinois courts generally recognize that a contract with a more or less definite period of duration may be held to continue for a reasonable time under the circumstances. (*Adkisson v. Ozment* (1977), 55 Ill. App. 3d 108, 112, 370 N.E.2d 594, 597-98.) Thus, we cannot agree with the trial court's conclusion that, as a matter of law, the contract was too indefinite.

For the above reasons, we reverse the trial court's order granting defendant summary judgment and remand for proceedings not inconsistent with this opinion.

Reversed and remanded.

SULLIVAN and MURRAY, JJ., concur.