**John GOULD, Plaintiff–Appellant,**

v.

**ARTISOFT, INCORPORATED, Defendant–Appellee.**

No. 92–2419.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 18, 1993.

Decided July 30, 1993.

---

Mark L. LeFevour (argued), Matt LaKoma, Gene Callahan, Callahan, Fitzpatrick, Lakoma & McGlynn, Oak Brook, IL, for plaintiff-appellant.

George F. Venci, Jr., David T.B. Audley (argued), Michael W. Ford, Chapman & Cutler, Chicago, IL, for defendant-appellee.

Before POSNER and ROVNER, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

ILANA DIAMOND ROVNER, Circuit Judge.

In this diversity action, John Gould alleges that Artisoft, Incorporated ("Artisoft") breached his employment contract. The district court dismissed Gould's complaint, concluding that he had failed to satisfy a condition precedent and, alternatively, that the contract failed for lack of consideration. Because we find that Gould sufficiently alleged the formation of a valid contract supported

by adequate consideration, we reverse and remand for further proceedings.

## I. FACTS

In reviewing this grant of a motion to dismiss, we consider only the well-pleaded factual allegations of Gould's second amended complaint and any reasonable inferences that might be drawn therefrom. *See Mid Am. Title Co. v. Kirk,* 991 F.2d 417, 419 (7th Cir.1993).

Artisoft, which distributes computer hardware and software products, hired John Gould in January 1991 to assemble and coordinate its nationwide sales force. In July of that year, Artisoft's Vice President of Sales and Marketing, David Hallmen, sent Gould a written offer to be Artisoft's Director of Sales. After making handwritten changes to Artisoft's offer, Gould signed the agreement on July 15, 1991, and Artisoft accepted Gould's proposed modifications in the last week of July. Under the terms of the agreement, Gould was to assume his new position on or before July 29, 1991, but until then, he was to remain in his previous position.

As a condition of his employment, the contract required Gould to execute "the enclosed nondisclosure and noncompetition agreement." (Gould App. Ex. F, at 6.) But no such agreement accompanied the written offer, nor did Artisoft tender such an agreement for Gould's signature prior to his termination. The contract provided for a three-month probationary period during which Artisoft would evaluate Gould's performance in his new position. At the end of the probationary period, either Gould or Artisoft could terminate the agreement if it became apparent that the arrangement was not mutually beneficial. The contract also contemplated that Gould would relocate to Tucson, Arizona, that Artisoft would pay the cost of his relocation, and that Artisoft would extend a bridge loan to facilitate Gould's purchase of a home in Tucson. If Gould were to resign from Artisoft within one year, however, he would be required to reimburse Artisoft for his relocation expenses. The contract further provided that in addition to his annual salary, Gould was to receive fifty shares of Artisoft stock.

When the parties executed the contract, Artisoft was a privately-held Arizona corporation. Plans were in the works, however, to make an initial public offering of Artisoft stock, and in anticipation of that offering, Artisoft was reincorporated in Delaware. On July 26, 1991, the fifty shares of stock referenced in the agreement were canceled and converted to 10,000 shares of the reincorporated Delaware corporation.

Artisoft terminated Gould's employment on August 7, 1991, less than two weeks after he assumed his new position with the company. The record does not reveal the reason, if any, for Gould's termination. Gould alleges that by the time he was terminated he already had begun "making the necessary arrangements to move and reside in Tucson, Arizona." (Gould App. Ex. F, at 4; *see also id.* at 2.)

After his termination, Gould sued Artisoft in the Circuit Court of Cook County, seeking specific performance of Artisoft's promise to provide fifty shares of stock. Gould asserted that he became entitled to the stock upon acceptance of Artisoft's offer and that his right to the stock was unaffected by his termination. Gould also sought a preliminary injunction barring the public offering of Artisoft stock, which he claimed would diminish the value of his shares.

Artisoft removed the action to federal court, and Gould responded with an emergency motion to remand, which the district court denied. The court found that the $50,000 amount in controversy requirement for diversity jurisdiction had been satisfied because the value of the disputed stock in either a public or private sale was likely to exceed the jurisdictional amount.

After the district court denied Gould's motion for injunctive relief, Artisoft moved to dismiss the complaint, arguing that a condition precedent to the employment contract—execution of the noncompetition agreement—had not been satisfied and that the contract lacked consideration. The district court granted Artisoft's motion in an oral opinion, and Gould appeals.

## II. DISCUSSION

### A. Federal Jurisdiction

■ We first must consider whether the $50,000 amount in controversy requirement of 28 U.S.C. § 1332(a) has been satisfied. If not, we would be required to vacate the district court's judgment and remand the action to state court. *See Shaw v. Dow Brands, Inc.,* 994 F.2d 364, 366 (7th Cir. 1993).

Our recent decision in *Shaw* establishes the analytical framework for considering whether the amount in controversy meets the threshold for diversity jurisdiction in removal cases. We generally would determine that amount "by merely looking at plaintiff's state court complaint, along with the record as a whole." *Id.* (citing *Oglesby v. RCA Corp.,* 752 F.2d 272, 275, 278 (7th Cir.1985); *Davenport v. Proctor & Gamble Mfg. Co.,* 241 F.2d 511, 513 (2d Cir.1957)). But here, as in *Shaw,* Gould's original complaint does not reveal the precise value of his claim, for he requested only specific performance of Artisoft's promise to tender the fifty shares. We have struggled before with the problem of determining the actual amount in controversy when plaintiffs request only declaratory or equitable relief. *See, e.g., Jadair, Inc. v. Walt Keeler Co.,* 679 F.2d 131, 132 (7th Cir.), *cert. denied,* 459 U.S. 944, 103 S.Ct. 258, 74 L.Ed.2d 201 (1982); *McCarty v. Amoco Pipeline Co.,* 595 F.2d 389, 391–95 (7th Cir.1979). But here, it is clear that the shares of stock themselves are at issue and that the amount in controversy therefore depends on the value of those shares. *See Sarnoff v. American Home Prod. Corp.,* 798 F.2d 1075, 1078 (7th Cir.1986) (amount in controversy equal to the present value of shares of stock allegedly due to the plaintiff over a ten-year period).

Because Artisoft invoked our jurisdiction by removing the case, it bears the burden of showing that the amount in controversy is sufficient. *Shaw,* 994 F.2d at 366; *see also*

*Wilson v. Republic Iron & Steel Co.,* 257 U.S. 92, 97, 42 S.Ct. 35, 37, 66 L.Ed. 144 (1921). *Shaw* requires that Artisoft meet its burden by a preponderance of the evidence, which means "proof to a reasonable probability that jurisdiction exists." *Shaw,* 994 F.2d at 366 & n. 2; *see also McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936). We look to the facts that existed at the time of removal to determine our jurisdiction, for a plaintiff "may not manipulate the process" to defeat federal jurisdiction and force a remand once the case has been properly removed. *Shaw,* 994 F.2d at 368; *see also id.* at 368.

■ Gould argues that the jurisdictional amount was not satisfied here because neither the present nor the prospective value of the Artisoft stock could be ascertained. Instead, Gould contends that the stock's value was speculative and therefore insufficient to establish jurisdiction. Like the district court, we reject the notion that the amount in controversy requirement can never be satisfied where stock with no ascertainable public market value is at issue. If the defendant can establish to a reasonable probability that the value of the stock in a private transaction would exceed the jurisdictional amount, that requirement is satisfied. *See Cumming v. Johnson,* 616 F.2d 1069, 1072 (9th Cir.1979).

Artisoft attempted to satisfy its burden with a draft of the Prospectus it planned to issue in connection with the initial public offering of its stock. (R. 4, at Ex. B.)[1] The draft Prospectus stated that the initial offering price would be between $11.50 and $13.50 per share, with a target price of $12.50 per share. Because Gould alleged an entitlement to 10,000 shares (after the conversion of his fifty shares pursuant to Artisoft's reincorporation), his claim would be valued at between $115,000 and $135,000. We view that estimate as persuasive evidence of the value of the disputed shares at the time of removal, particularly because Gould presented no evi-

---

1. The district court was entitled to consider the draft Prospectus although it was attached to Artisoft's memorandum in opposition to the emergency motion to remand, rather than to the removal petition itself. In testing the sufficiency of the jurisdictional amount alleged in a removal petition, a district court is not obliged to rely solely on the plaintiff's complaint or on the jurisdictional statements in the removal petition; rather, "[i]t is entitled to consider the matter when the parties raise it, as they did here by a motion to remand and the memorandum and affidavits in opposition thereto." *Jadair,* 679 F.2d at 132–33.

dence to cast doubt on the accuracy of the estimated price range. Gould argued only that the share value was speculative and that the initial public offering was itself not a certainty. Yet the speculative nature of the estimated share price cannot defeat federal jurisdiction in the absence of evidence suggesting a significantly lesser value.[2] And even if it was possible at the time of removal that the initial public offering would not occur,[3] jurisdiction still was proper if Artisoft could show to a reasonable probability that the stock's value in a private sale also would exceed $50,000. *See Cumming*, 616 F.2d at 1072. Absent evidence of a previous stock sale, the private sale value can be stated as the percentage of the total value of the company represented by Gould's shares. The assets of the company as evidenced in the draft Prospectus, and therefore the company's value in a private sale, support the district court's conclusion that the amount in controversy exceeds the jurisdictional amount. In fact, Gould has not contested the district court's conclusion to this effect. (*See* Sept. 4, 1991 Tr. at 14.) We therefore find that the district court properly exercised jurisdiction over Gould's complaint.[4]

### B. Dismissal of Gould's Complaint

◼ Having resolved the jurisdictional issue, we turn to the merits. We review the district court's decision to dismiss Gould's complaint de novo, accepting as true the complaint's well-pleaded factual allegations and drawing all reasonable inferences in Gould's favor. *Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1019 (7th Cir.1992); *Prince v. Rescorp Realty*, 940 F.2d 1104, 1106 (7th Cir.1991). We may affirm the dismissal of Gould's complaint only if "it appears beyond doubt that [he] can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *see also Mid Am. Title Co.*, 991 F.2d at 419. The district court dismissed the complaint both because Gould had failed to satisfy a condition precedent to the employment contract and because the contract lacked adequate consideration.[5]

### 1. Condition Precedent

◼ Although the parties' agreement provides that "[a]s a condition of employment, [Gould] will be required to sign the enclosed nondisclosure and noncompetition agreement," (Gould App. Ex. F, at 6), Artisoft never provided a noncompetition agreement for Gould's signature.[6] The district court determined that without the signed noncompetition agreement, no contract had been formed. (Feb. 28, 1992 Tr. at 6.) The court found that Artisoft's failure to tender the agreement did not excuse satisfaction of the condition because it was "at least theoretically possible that Gould could have on his own tendered to the defendant a written promise

---

**2.** In fact, that value would have to be less than half the estimated value in the draft Prospectus before the amount in controversy would fall below the jurisdictional amount.

**3.** We were informed at oral argument, however, that the initial public offering did occur and that Artisoft's shares are now publicly traded.

**4.** If we were to assess the value of this case from Artisoft's perspective in accordance with the "either viewpoint" rule (*see McCarty*, 595 F.2d at 395; *see also Gottlieb v. Westin Hotel Co.*, 990 F.2d 323, 329–30 (7th Cir.1993)), we agree with Artisoft that we would be likely to find jurisdiction because the pecuniary harm to Artisoft from the injunctive relief Gould requested would exceed $50,000. In fact, Gould's counsel conceded at oral argument that the harm to Artisoft from an order enjoining its initial public offering would have exceeded the jurisdictional amount. We do not base our decision on this ground,

however, as it was raised for the first time on appeal and was not considered by the district court. At the same time, we do not suggest that this would not also be a proper basis for the exercise of federal jurisdiction. *See, e.g., Hoefferle Truck Sales, Inc. v. Divco–Wayne Corp.*, 523 F.2d 543, 549 (7th Cir.1975) (finding jurisdiction on a ground not raised before the district court).

**5.** The district court seemed to reach these conclusions somewhat reluctantly, stating at the outset of its oral ruling that it had "some difficulties with this given the presumptions in favor of the pleader of the complaint. But I'm going to grant the motion to dismiss." (Feb. 28, 1992 Tr. at 5.)

**6.** Artisoft's counsel told us at oral argument that his client had prepared the noncompetition agreement and was in the process of submitting the agreement for Gould's signature but that Gould's employment was terminated before that occurred.

not to disclose what he learned and not to compete." (*Id.* at 7.) But this "theoretical possibility" is inconsistent with the plain language of the parties' contract. By failing to tender a noncompetition agreement for Gould's signature, Artisoft waived the condition that Gould execute such an agreement.

 Under Illinois law,[7] "[a] condition precedent is some act that must be performed or event that must occur before a contract becomes effective or before one party to an existing contract is obligated to perform." *Hardin, Rodriguez & Boivin Anesthesiologists, Ltd. v. Paradigm Ins. Co.,* 962 F.2d 628, 633 (7th Cir.1992); *see also Wasserman v. Autohaus on Edens, Inc.,* 202 Ill.App.3d 229, 147 Ill.Dec. 571, 576, 559 N.E.2d 911, 916 (1990); *Grill v. Adams,* 123 Ill.App.3d 913, 79 Ill.Dec. 342, 346, 463 N.E.2d 896, 900 (1984); *Lyntel Products, Inc. v. Alcan Aluminum Corp.,* 107 Ill. App.3d 176, 63 Ill.Dec. 4, 7, 437 N.E.2d 653, 656 (1981). If the condition is not satisfied, then any obligations of the parties under their agreement are at an end. *Cummings v. Beaton & Assocs., Inc.,* —— Ill.App.3d ——, ——, 187 Ill.Dec. 701, 712, 618 N.E.2d 292, 303, (Ill.App.Ct.1992); *Grill,* 79 Ill.Dec. at 346, 463 N.E.2d at 900; *Lyntel Products,* 63 Ill.Dec. at 7, 437 N.E.2d at 656. However, "[c]onditions precedent may be waived when a party to a contract intentionally relinquishes a known right either expressly or by conduct indicating that strict compliance with the conditions is not required." *Hardin, Rodriguez & Boivin,* 962 F.2d at 633; *see also Quake Constr., Inc. v. American Airlines, Inc.,* 141 Ill.2d 281, 152 Ill.Dec. 308, 323, 565 N.E.2d 990, 1005 (1990). For example, where satisfaction of the condition is within the sole control of one party, that party may not prevent satisfaction of the condition in order to escape its contractual obligations. *Cummings,* —— Ill.App.3d at ——, 187 Ill.Dec. at 712, 618 N.E.2d at 303; *Wasserman,* 147 Ill.Dec. at 578, 559 N.E.2d

at 918; *Grill,* 79 Ill.Dec. at 346, 463 N.E.2d at 900; *cf. Unit Trainship, Inc. v. Soo Line R.R. Co.,* 905 F.2d 160, 163 (7th Cir.1990) ("where a party's obligation is subject to a condition precedent, a duty of good faith and fair dealing is imposed upon that party to cooperate and to not hinder the occurrence of the condition.").

The contract here plainly states that Gould was required to sign the "enclosed nondisclosure and noncompetition agreement." Use of the word "enclosed" placed the obligation on Artisoft to provide such an agreement for Gould's signature, either with the contract or perhaps shortly thereafter. Yet, Artisoft did not provide a noncompetition agreement prior to Gould's termination, and we do not believe that Gould was required to draft and execute his own agreement in light of the express contractual language. Artisoft thus waived satisfaction of the condition, and it may not rely on the failure of the condition precedent to escape its obligations.

### 2. Consideration

 The district court also dismissed Gould's complaint because it found that the contract lacked consideration. Although it acknowledged that a promise for a promise can constitute consideration in an appropriate circumstance, the court concluded that "there is simply nothing that shows detriment to Gould which would constitute consideration." (Feb. 28, 1992 Tr. at 7–8.) We disagree. Although Gould had not yet taken action to fulfill his promises when his employment was terminated, those promises nonetheless provide adequate consideration for the agreement.

First, Gould promised to sign a noncompetition agreement. That promise clearly involves a detriment in that it limits Gould's

---

**7.** Artisoft takes no position as to whether Illinois or Arizona law controls our analysis of the parties' agreement. (*See* Artisoft Br. at 14 n. 11.) Gould, meanwhile, cites only to Illinois cases. Neither suggests that the substantive laws of Illinois and Arizona differ with respect to the issues raised here. Where the parties have not identified a conflict between the two bodies of state

law that might apply to their dispute, we will apply the law of the forum state—here, Illinois. *Coleman v. Ramada Hotel Operating Co.,* 933 F.2d 470, 473 (7th Cir.1991); *Gonzalez v. Volvo of Am. Corp.,* 752 F.2d 295, 299 (7th Cir.1985) ("Where parties fail to raise a possible conflict of substantive laws, the better rule . . . is that the substantive law of the forum controls.").

future employment opportunities; it therefore constitutes adequate consideration despite the fact that the agreement had not been signed prior to Gould's termination. Moreover, Gould promised to relocate to Tucson, Arizona. That too is a promise to incur a detriment and is adequate consideration for the contract even if Gould had yet to relocate.

These promises, given by Gould in exchange for Artisoft's promise of employment and compensation in accordance with the terms of the contract, constitute adequate consideration under Illinois law. *See Cohen v. Wood Bros. Steel Stamping Co.*, 175 Ill. App.3d 511, 124 Ill.Dec. 951, 953, 529 N.E.2d 1068, 1070 (1988); *In re Estate of Parker*, 171 Ill.App.3d 538, 121 Ill.Dec. 842, 846, 525 N.E.2d 1149, 1153 (1988) ("Mutual and concurrent promises are sufficient legal consideration for a contract."); *Anderson v. Vrahnos*, 149 Ill.App.3d 251, 102 Ill.Dec. 488, 490, 500 N.E.2d 110, 112 (1986). The fact that these promises relate to future conduct and did not result in a present detriment does not invalidate the agreement.[8] In *Estate of Parker*, 121 Ill.Dec. at 847, 525 N.E.2d at 1154, which involved a prenuptial agreement obligating both parties to deposit $10,000 in certificates of deposit into a joint account, "[t]he fact that neither party had acquired the certificates of deposit as required by the prenuptial agreement did not void the agreement as it was the promise to do so and not the actual purchase of the certificates of deposit that formed the consideration." Here, Gould's promises to sign the noncompetition agreement and to relocate similarly provided consideration for the parties' agreement. The agreement is therefore not void for lack of consideration.

### III. CONCLUSION

Because Gould alleged facts suggesting that Artisoft had waived the condition precedent and that the contract was supported by adequate consideration, the district court's judgment dismissing Gould's complaint is re-

8. In any event, Gould did allege that he had begun making arrangements to relocate to Tucson, Arizona. (*See* Gould App. Ex. F, at 2 & 4.) Accepting that allegation as true, Gould already

versed, and the case is remanded to the district court for further proceedings.

REVERSED AND REMANDED.

had incurred a concrete detriment in return for Artisoft's promise to make him its Director of Sales.