UNITED STATES of America,
Plaintiff,

v.

CITY OF FAIRVIEW HEIGHTS,
ILLINOIS, Defendant.

No. 00–CV–0331–MJR.

United States District Court,
S.D. Illinois.

Dec. 11, 2000.

James M. Hipkiss, Assistant U.S. Atty., Fairview Heights, IL, Bill L. Lee, Richard A. Koffman, U.S. Dept. of Justice, Housing & Civil Enforcement, Clay G. Guthridge, Kevin J. Kijewski, U.S. Dept. of Justice, Washington, DC, for U.S.

John J. Pawloski, Boggs, Backer et al., St. Louis, MO, Paul J. Evans, O'Fallon,

IL, for Catherine Thouvenot, Pauline Brisk, Anthony Holdener, Agnes Schmiski, Lillian Holdener, Frederick J Holdener, Ronald J Holdener, Linda K Holdener, Robert Holdener, Thomas Holdener.

Mark D. Bauman, Dawn A. Sallerson, James F. Clayborne, Jr., Jeffrey A. Kopis, Sr., Hinshaw & Culbertson, Belleville, IL, Robert E. Becker, Garrett P. Hoerner, Becker, Paulson et al., Belleville, IL, for City of Fairview Heights.

## MEMORANDUM AND ORDER

REAGAN, District Judge.

### I. Introduction and Procedural Overview

In April 2000, the United States of America ("the Government") filed this action against the City of Fairview Heights, Illinois ("the City") to enforce the federal Fair Housing Act, 42 U.S.C. § 3601, *et seq.* Specifically, the lawsuit challenges the City's December 1998 denial of Rodney Forte's application to build a luxury apartment complex on a 26.5–acre parcel of land in Fairview Heights ("the Property").

The Government seeks a declaration that the City violated the Fair Housing Act, a permanent injunction prohibiting the City from "continuing to discriminate on the basis of race," a requirement that the City approve Forte's development ("the Villas at Lake Chester"), an award of damages to compensate each person aggrieved by the City's discriminatory housing practices, and a civil penalty to "vindicate the public interest." The case was assigned to the Honorable David R. Herndon.

In late June 2000, the Government moved the Court to issue a temporary restraining order ("TRO") and a preliminary injunction. The Fairview Heights City Council was scheduled to meet on July 5th to consider a petition filed by Tom Glosier of Windsor Homes to change the zoning classification on the Property. Glosier had contracted to purchase a parcel of real estate which included the 26.5 acres

that Forte attempted to develop as luxury apartments. Glosier's contract was contingent on the City rezoning the property for single family dwellings. The Government argued that if the City granted Glosier's zoning amendment request, Glosier would buy the land and build on the site, rendering the Property unavailable for Forte to develop.

On July 5th, Judge Herndon issued a TRO restraining the City from altering the zoning classification of—or approving any development plan for—the Property, until the Court ruled on the Government's motion for preliminary injunction. Judge Herndon convened a hearing on the motion for preliminary injunction one week later but agreed to postpone the hearing while Glosier consulted counsel and continued discussions with the owners of the Property (a group of intervenors referred to as the "Thouvenots/Holdeners"). Counsel for the City agreed to continue the TRO until the Court revisited the issue.

On July 21, 2000, the Government filed a First Amended Complaint. The amended complaint added a statutory cite, inserted the title of the resolution passed by the Fairview Heights City Council in December 1998, and contained a "Second Claim for Relief," which alleges that the City denied rights guaranteed by the Fair Housing Act and that this denial "raises an issue of general public importance" (Doc. 26, p. 6). The Government also filed a second motion for preliminary injunction, asking the Court to enjoin the Thouvenots/Holdeners from selling the Property.

Two motions for preliminary injunction were pending on September 15, 2000, when Judge Herndon conducted a status conference with counsel for all parties, plus Mr. Forte and Mr. Glosier in attendance. Arguments were presented regarding the TRO and the motions for preliminary injunction. Mr. Forte candidly addressed the Court regarding the difficulties inherent in attempting to redevelop the Property now (*e.g.*, almost

two years had passed since the City rejected his application, and Forte faced significantly increased construction costs and interest rates). Mr. Glosier updated the Court on his position regarding purchase of the Property.

Judge Herndon ordered that the TRO entered on July 5th be dissolved at Noon on September 22, 2000. In a written Order accompanying his ruling, Judge Herndon found that the reasons justifying issuance of the TRO no longer existed, and the factual situation regarding the Property had changed significantly (e.g., there no longer was a development proposal or zoning change request involving the Property before the City Council). The Court denied as moot the Government's motion for preliminary injunction "to prevent the sale of the Property," as the contract of sale between Mr. Glosier and the Thouvenots/Holdeners had expired by its own terms. The only motion left pending was the Government's June 30 motion for preliminary injunction (Doc. 5). Judge Herndon set a hearing on that motion for January 4, 2001.

When the case was transferred from Judge Herndon to the undersigned Judge, the June 30 motion for preliminary injunction remained pending. So did the City's September 28, 2000 motion to dismiss the Government's amended complaint (Doc. 54–1) and alternative motion to strike the Government's amended complaint (Doc. 54–2). Because this Judge hears motions on Mondays, the Court rescheduled the hearing on the preliminary injunction to January 8th. The Court now rules as follows on the motion to dismiss and/or strike.

## II. *Applicable Legal Standards*

The City moves to dismiss and/or strike the Government's First Amended Complaint. The dismissal motion is founded both on FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1) and FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6). The City argues that this Court lacks subject matter jurisdiction over the Government's "First Claim for Relief" and that the first claim fails to state a cause of action upon which relief can be granted under the Fair Housing Act. The City further argues that this Court should strike portions of the amended complaint "for lack of standing" and strike other portions because the "aggrieved persons" referred to therein are not sufficiently identified.

 Federal notice pleading requires a plaintiff to set forth in his complaint "a short and plain statement ... that will provide the defendant fair notice of the claim." Scott v. City of Chicago, 195 F.3d 950, 951 (7th Cir.1999)(citing Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993)). A complaint need not set out every element of a legal theory to provide notice and need only "allow the defendant to understand the gravamen" of the plaintiff's claims. Scott, 195 F.3d at 952 (quoting Doherty v. City of Chicago, 75 F.3d 318, 326 (7th Cir.1996)).

In deciding whether to grant a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court accepts as true all well-pled allegations and resolves in favor of the plaintiff all reasonable inferences. Marshall–Mosby v. Corporate Receivables, Inc., 205 F.3d 323, 326 (7th Cir.2000). Dismissal under Rule 12(b)(6) is proper only if the plaintiff can prove no set of facts that would entitle him to relief. Id. (citing Conley v. Gibson, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). Accord Gould v. Artisoft, Inc., 1 F.3d 544, 548 (7th Cir.1993). As the Seventh Circuit has noted, motions to dismiss for failure to state a claim "must receive careful scrutiny" and are "not often granted." Sidney S. Arst Co. v. Pipefitters Welfare Educ. Fund, 25 F.3d 417, 420 (7th Cir.1994).

 Additionally, in ruling on a 12(b)(6) dismissal motion, the Court may review only the complaint and any attached materials. For instance, the Court may not

consider affidavits or documentary evidence not attached to the complaint, without converting the dismissal motion to a summary judgment motion, giving the parties notice of the conversion, and allowing counsel a "reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Fed. R. Civ. Proc. 12(b)(6).

 FEDERAL RULE OF CIVIL PROCEDURE 12(f) governs motions to strike. The rule authorizes the district courts to strike insufficient defenses. Additionally, the courts may strike from any pleading "redundant, immaterial, impertinent, or scandalous matter." Allegations may be stricken if the matter alleged bears no possible relation to the controversy or may cause the objecting party prejudice. *Talbot v. Robert Matthews Distributing Co.*, 961 F.2d 654, 664 (7th Cir.1992). As a general rule, motions to strike are disfavored, in part because they tend to delay judicial proceedings. *Heller Financial, Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1294 (7th Cir.1989). *See also Williams v. Jader Fuel Co.*, 944 F.2d 1388, 1400 (7th Cir.1991)("Motions to strike 'are not favored....'"), *cert. denied*, 504 U.S. 957, 112 S.Ct. 2306, 119 L.Ed.2d 228 (1992).

### III. *Analysis*

Having carefully applied the above-stated standards to the allegations of the First Amended Complaint, the Court concludes that it should deny the City's motions.

 First, the Court rejects the City's argument that subject matter jurisdiction is lacking over this case, because the Secretary of the Department of Housing and Urban Development ("HUD") did not make a "reasonable cause determination" under Section 810(g)(2)(C) of the Fair Housing Act. 42 U.S.C. § 3610 delineates the procedures by which HUD handles housing discrimination complaints.

In most cases, the HUD Secretary investigates the alleged discriminatory housing practice and completes that investigation within 100 days after the administrative complaint was filed by the aggrieved person. The Secretary then determines whether reasonable cause exists to believe that a discriminatory housing practice has occurred (or is about to occur). If reasonable cause *is* found, the Secretary immediately issues a charge on behalf of the aggrieved person, and action is taken under § 3612 of the Act. 42 U.S.C. § 3610(g)(2)(A).[1]

Section 3610(g)(2)(C) sets forth an *exception* to this typical procedure. In cases involving "the legality of any State or local zoning or ... land use law or ordinance," instead of issuing a charge, the Secretary immediately refers the matter to the U.S. Attorney General, who has the discretion to file suit or decline to take action under § 3614 (the enforcement provision of the Act). Review of the amended complaint discloses that the case at bar does involve the legality of a local zoning or land use law or ordinance. Thus, the Secretary of HUD did not need to make a reasonable cause determination before this suit could proceed in federal court. Dismissal under Rule 12(b)(1) is inappropriate.

 Furthermore, the amended complaint survives scrutiny under Rule 12(b)(6). The City argues that the Government's "First Claim for Relief" is "completely devoid of any allegations pertaining to the legality of any State or local zoning or other land use law or ordinance" (Doc. 58, p. 11). But paragraph 10 of the amended complaint challenges the City Council's passage of a certain piece of legislation (Resolution No. 2560–'98) relating to a local land use matter—Mr.

---

1. After the Secretary issues the charge, a HUD Administrative Law Judge adjudicates the matter. The complainant, the respondent, or any aggrieved person can elect to have the charge decided in a civil action in federal court rather than via hearing before the Administrative Law Judge. *See* 42 U.S.C. §§ 3612(a), 3612(*o*).

Forte's development of the Property as "the Villas."

Construing all well-pled facts and reasonable inferences in the light most favorable to plaintiff, the Government, the complaint does state a claim upon which relief can be granted under the Fair Housing Act. Dismissal under Rule 12(b)(6) is inappropriate.

Finally, the Court declines to strike any portion of the amended complaint. As mentioned above, such motions are generally disfavored. Here, the City has not demonstrated that paragraph 3, paragraph 4, or the prayer for relief contains "redundant, immaterial, impertinent, or scandalous matter". Accordingly, striking under Rule 12(f) is inappropriate.

## IV. *Conclusion*

For all these reasons, the Court **DENIES** the City's September 28, 2000 motion to dismiss (Doc. 54–1) and **DENIES** the City's September 28, 2000 alternative motion to strike (Doc. 54–2).

The Court will conduct a hearing on the June 30, 2000 motion for preliminary injunction (Doc. 5), as scheduled, at **1:30 p.m. on January 8, 2001.** That motion (a) references a petition by Mr. Glosier to change the zoning classification on the 26.5–acre tract, and (b) asks the Court to enjoin the City from "changing the zoning classification or approving a developmental plan" for the Property.

To this Court's knowledge, Mr. Glosier no longer has a zoning change request pending, Mr. Glosier does not require rezoning to accommodate the development he proposes, and there is no longer any development plan involving the Property pending before the City Council. There is no clear indication in the record that Mr. Forte currently desires or intends to develop the Property as luxury apartments. Therefore, the parties should be prepared, at the January 8th hearing, to address whether certain of the relief sought in the motion for preliminary injunction has been rendered moot.

**IT IS SO ORDERED.**